UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
J.U.

                        Petitioner,

            - against-

RAUL MALDONADO, *in his official capacity as*
*Warden of the Metropolitan Detention Center*,

                     Respondent.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-04836 (OEM)

ORELIA E. MERCHANT, United States District Judge:

       Petitioner J.U.[1] ("Petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE") at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. *See* Petition for Writ of Habeas Corpus ("Pet."), ECF 1. Petitioner contends that on July 1, 2025, ICE unlawfully arrested and detained him at a Manhattan immigration court without first making an individualized assessment as to whether he poses a flight risk or danger to the community and therefore without due process. *Id.* Petitioner challenges his detention as a violation of the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act ("INA") and its implementing regulations. *Id.* Petitioner seeks immediate release from custody. For the following reasons, Petitioner's petition for a writ of habeas corpus is granted.

---

[1] On September 5, 2025, the Court granted Petitioner's motion for leave to proceed under pseudonym.

## BACKGROUND[2]

Petitioner is a Venezuelan national who fled his home country in May 2023 to escape persecution based on his political beliefs and his sexual orientation. Pet. ¶¶ 22, 31.

He entered the United States through El Paso, Texas, on or about March 18, 2024. *Id.* ¶ 32. He "presented himself" to U.S. Customs and Border Protection ("CBP") border patrol agents and was detained. *Id.* The next day, on March 19, 2024, CBP served Petitioner with a Form I-200 "warrant for arrest of alien" under "section 236 of the [INA]" and a Notice to Appear charging Petitioner with removability under INA § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i). Notice to Appear ("NTA"), ECF 2-1. The NTA has separate boxes to designate an alien in removal proceedings: "arriving alien," "alien present in the United States who has not been admitted or paroled," or alien "admitted to the United States, but are removable for reasons" stated in the form. *Id.* Petitioner was designated as an "alien present in the United States who has not been admitted or paroled." *Id.* The NTA placed Petitioner "[i]n removal proceedings under section 240 of the Immigration and Nationality Act," directing him to appear before an immigration judge in New York, New York for a hearing to be held on June 17, 2025, at 10:00 a.m. *Id.*

That same day, DHS released Petitioner from custody on "[his] own recognizance" "pending final administrative determination in [his] case" "in accordance with Section 236 of the [INA]", 8 U.S.C. § 1226. Notice of Custody Determination, ECF 2-15; Order of Release on Recognizance, Ex. D, ECF 17. Upon his release from custody, Petitioner moved to New York, where he had been living up until his unlawful arrest and detention.

---

[2] The following facts are primarily drawn from Petitioner's habeas petition, Pet.; the declaration of attorney for Petitioner, Marc L. Greenwald ("Greenwald Decl."), ECF 2, and exhibits attached thereto, ECF 2-1-2-21; Respondent's Opposition to the Petition for Writ of Habeas Corpus and Response to the Court's Order To Show Cause ("Resp."), ECF 16; the declaration of MDC clinical director Bruce Bialor, M.D. ("Bailor Decl.") and exhibits thereto, ECF 16-2; the declaration of deportation officer Michael Charles ("Charles Decl.") and exhibits attached thereto, ECF 17; Petitioner's Reply in Support of his Petition ("Reply"), ECF 19.

Since his release more than a year ago, Petitioner has "established community ties, including finding lawful employment and a romantic partner" with whom he has made a home. Pet. ¶ 3. On May 16, 2024, Petitioner timely filed a Form I-1589 application for asylum application and for withholding of removal under the Convention Against Torture ("CAT"). ECF 2-2. DHS granted Petitioner's application for employment authorization and issued him a social security number and employment authorization document ("EAD"). ECF 2-16. His EAD allowed him to obtain employment in the U.S.; he worked at Flying Food Group, a catering service that prepares meals for airlines. Pet. ¶ 41; ECF 2-17. Petitioner has "no criminal history in any country", as he was never arrested or incarcerated prior to July 1, 2025. Pet. ¶ 4; ECF 2-20 ("Subject has no criminal history"); ECF 2-21.

Petitioner "has complied with all procedures for his asylum application and all conditions of release" as they relate to his immigration case, including checking in with ICE within one week of arriving in New York. Pet. ¶¶ 36, 38. On July 1, 2025, Petitioner appeared at a scheduled proceeding on his asylum application in immigration court, at 26 Federal Plaza in New York, New York. *Id.* ¶ 44. While in court, Petitioner alleges that "ICE agents indiscriminately arrested [Petitioner] and approximately 40 other persons." *Id.* ¶ 44. Petitioner contends that "DHS made no [individualized] determination, nor could it possibly have concluded that [he] is a flight risk or any danger to the community, as no facts would support that conclusion." *Id.* ¶ 6. Petitioner specifically alleges that "there was no change in circumstances between March 2024, when ICE made the decision to release [him] on his own recognizance, and July 2025, when ICE arrested [him], sufficient to justify [his] arrest." *Id.* ¶ 45. "DHS made no individualized determination as to [Petitioner] before arresting him" and "no one at DHS has ever articulated any individualized reason that [he] has been arrested or detained." *Id.*

3

Following his arrest and detention at the immigration court, Petitioner was initially detained at 26 Federal Plaza for approximately a week and on July 8, 2025 was transferred to MDC, where he since has been held. *Id.* ¶ 52.

## PROCEDURAL HISTORY

On August 29, 2025, Petitioner commenced this action by filing a petition for a writ of habeas corpus, stating that his continued detention violates his due process under the Fifth Amendment's Due Process Clause and the INA. His Petition was supported by a declaration and exhibits. Petitioner also filed a motion to proceed under pseudonym. The case was initially assigned to Senior District Judge Amon, and on September 4, 2025, it was reassigned to the undersigned.

On September 5, 2025, the Court granted Petitioner's motion to proceed under pseudonym and issued an Order to Show Cause ("OSC") why this writ of habeas should not be granted. The Court's Order directed Petitioner to serve a copy of the OSC and the Petition on Respondent by September 5, 2025, directed Respondent to file a response by September 8, 2025, and set a hearing for September 11, 2025. The Court also directed that Petitioner not be removed from the United States until further order of the Court.

That same day, with the consent of the Petitioner, Respondent requested an extension of time to file a return to the OSC and requested that the hearing be adjourned to a later date. The Court granted the extension request, directed Respondent to file a return by September 12, 2025, and rescheduled the hearing to September 17, 2025, at 11:30 a.m. On September 12, 2025, Respondent filed a return, and on September 15, 2025, supplemented its response with an updated declaration and exhibits. Petitioner filed a reply and exhibits on September 16, 2025.

4

The Court held a hearing on the Order to Show Cause on September 17, 2025, at 11:30 a.m.  Official Transcript of Proceeding ("Tr."), ECF 22.

## DISCUSSION

Petitioner argues that the government's decision to arrest and detain him without an individualized assessment as to whether he is a flight risk and a danger to the community violates the Due Process Clause and the INA.  *See generally* Pet.  Upon review of the submissions before the Court, there are three broad issues raised: (1) whether Petitioner is required to exhaust his administrative remedies before seeking relief from this Court; (2) whether Petitioner, who has resided in the United States for more than a year, was detained under 8 U.S.C. § 1225(b)(2)(A) or under 8 U.S.C. § 1226(a); and (3) to the extent the Court finds that Petitioner was detained under § 1226(a), whether Petitioner's detention violates the Due Process Clause of the Fifth Amendment.  *See* Pet; Resp.; Reply.  The Court addresses each issue in turn.

**A.    Whether Petitioner Is Required to Exhaust Administrative Remedies**

Federal courts have jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  The parties do not contest that § 2241 confers jurisdiction on this Court to hear the instant petition.  Rather, Respondent argues that Petitioner's challenge to his detention at MDC in this Court is premature because he has not exhausted his administrative remedies in immigration court by requesting discretionary parole under § 1225 and because his bond appeal is still pending before the Board of Immigration Appeals ("BIA") and that none of the exceptions to the exhaustion requirement apply.  Resp. at 8-9.

Petitioner contends that exhausting his administrative remedies would be futile.  Petitioner argues that the September 5, 2025 decision issued by the BIA in *Matter of Yajure Hurtado*, 29 I&N

Dec. 216 (BIA 2005), precludes immigration judges from hearing bond requests for noncitizens[3] detained under § 1225, forecloses any available administrative remedies in this action. Further, Petitioner contends that administrative exhaustion should be excused because: (1) Petitioner brings a constitutional claim and has presented a substantial constitutional question for which immigration courts do not have the authority to provide relief; (2) a bond hearing or appeal after arrest is no substitute for the injury already inflicted on Petitioner by the unlawful arrest and detention as there was no individualized determination made; and (3) the duration of the appeal favors excusing administrative exhaustion. Pet. ¶¶ 93-109.

Courts generally require "administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus." *Quintanilla v. Decker*, 21-CV-417, 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) (citing *Joseph v. Decker*, 18-CV-2640, 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)). However, exhaustion is a "prudential matter," not a "statutory requirement." *Id.* Indeed, courts in this Circuit have excused exhaustion when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), as amended (July 24, 2003).

As to the first and third exceptions, there are no administrative remedies available that could provide Petitioner with the relief he seeks. This is easily demonstrated by the source of the injury alleged: Petitioner asserts that the original constitutional transgression occurred when ICE detained him on July 1, 2025, without first making an individualized determination that he posed a flight risk or a danger to community, or any other type of process and notice that would justify

---

[3] The terms "noncitizen" and "alien" are used interchangeably in this Order.

the detention.  Thus, the only cure to that unlawful detention is the vacatur of detention – that is, the release of Petitioner from ICE custody.  As explained *infra*, while a noncitizen detained under § 1226(a) is entitled to a bond hearing, "the implementing regulations provide that '[s]uch hearings . . . are provided for the purpose of custody re-determination—a hearing held by an immigration judge after ICE makes its initial decision to detain.'"  *Lopez Benitez v. Francis*, 25-CV-5937 (DEH), 2025 WL 2371588, at *13 (S.D.N.Y. Aug. 13, 2025) (quoting *Chipantiza-Sisalema v. Francis*, 25-CV-5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025); *see also* 8 C.F.R. 236.1(d)(1).  But there was no "initial decision" as ICE's detention of Petitioner did not comport with the implementing regulations and § 1226(a); thus, a bond hearing for a post-deprivation review is wholly inadequate to remedy that unlawful detention.  *See Chipantiza-Sisalema*, at *3 (bond  hearing "is no substitute for the requirement that ICE" must follow prior to the initial decision to "strip a person of the freedom that lies at the heart of the Due Process Clause"); Tr. 33:2-34:4 (Petitioner's counsel explaining that bond hearing is designed to address a noncitizen's challenge that the already-made individualized determination made to initially detain was in error).

As to the second exception, waiver of the exhaustion requirement is warranted because Petitioner is likely to experience irreparable harm if he is unable to seek habeas relief in this Court until the BIA issues a ruling on Petitioner's appeal of the denial of his bond application.  Further, an immigration judge has already considered and denied Petitioner's bond request and therefore the principles undergirding the exhaustion requirements are not present here.

Finally, Petitioner's petition raises a substantial constitutional question that cannot properly be adjudicated administratively.  *See Lopez Benitez*, 2025 WL 2371588, at *14.  Here, Petitioner contends that his continued detention under § 1226(a) without DHS first making an individualized determination constitutes a violation of his due process rights.  Yet, neither an immigration judge

nor the BIA is positioned to properly adjudicate such a claim. *See Lopez Benitez*, 2025 WL 2371588, at *14; *Valdez v. Joyce*, 25-CV-4627 (GBD), 2025 WL 1707737, at *1 n.1 (S.D.N.Y. June 18, 2025) ("Petitioner has raised a constitutional question that could not be properly addressed by the Immigration Judge or Board of Immigration Appeals."). Therefore, the Court concludes that Petitioner is excused from exhausting administrative remedies before seeking relief in this Court.

**B.    Whether Petitioner Is Detained Under 8 U.S.C. § 1225 or § 1226**

A threshold question in this case is whether Petitioner is detained pursuant to the government's authority under § 1225(b), as Respondent contends, or under § 1226(a), as Petitioner's March 2024 Notice of Custody Determination, Notice to Appear, and Order of Release on Recognizance would indicate.

**1.   Statutory and Regulatory Framework of § 1225 and § 1226**

The two principal statutes that govern the detention of noncitizens pending removal proceedings are 8 U.S.C. § 1225 and § 1226. The parties agree that the two provisions are exclusive; a noncitizen can only be subject to § 1225 or § 1226, not both. Tr. at 10:12-25 (Petitioner's counsel "agree[s]" that the sections are mutually exclusive); *id.* at 11:3-4 ("the Government's position is that it can't be both at the same time.").

**a)  Section 1225**

Section 235(a) of the INA, codified at 8 U.S.C. § 1225, provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission are divided into two categories: those covered by § 1225(b)(1) and those covered by § 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) applies to aliens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," *id.* (citing § 1225(b)(1)(A)(i)), and other aliens who receive special designation by the Attorney General, § 1225(b)(1)(A)(iii). Section 1225(b)(2) is a "catchall provision" that applies to all other applicants. *See Jennings*, 583 U.S. at 287 (explaining that § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)").

Both § 1225(b)(1) and (b)(2) require the detention of persons deemed to be applicants for admission. Applicants for admission covered by § 1225(b)(1) are removed "without further hearing or review" under an expedited removal process, unless the alien "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case that alien is referred for an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" *Jennings*, 583 U.S. at 287 (quoting § 1225(b)(1)(B)(ii)). However, applicants who do not assert such claims or whom the immigration officials "found not to have such a fear," this statutory provision require that they "shall be detained . . . until removed." 8 U.S.C. § 1225(b)(1)(A)(ii), (B)(iii)(IV).

Turning to § 1225(b)(2), it provides that:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

Regardless of which sub-section of § 1225(b)'s mandatory detention applies to a particular noncitizen, that noncitizen may nonetheless be, in the discretion of the Secretary of Homeland Security, "parole[d] into the United States temporarily under such conditions as he may prescribe

only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *see Jennings*, 583 U.S. at 288. Once the purposes of parole have been achieved, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

### b) Section 1226

Section 1226(a) governs a separate non-mandatory detention scheme and provides the "default rule" for detaining and removing aliens "already present in the United States." *Jennings*, 583 U.S. at 303. It provides that:

> on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

8 U.S.C. § 1226(a). While that decision is pending, the Attorney General may "continue to detain the arrested alien," "release the alien on bond of at least $1,500," or "release the alien on conditional parole." *Id.* § 1226(a)(1)-(2). Section 1226(c) contains several exceptions for persons "who fall[ ] into one of the enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 303.

### 2. Lawfulness of Petitioner's Detention

The record before the Court, including the government's treatment of Petitioner since his arrival in the United States in March 2024, establishes that Petitioner was detained pursuant to the government's discretionary authority under § 1226(a). Petitioner crossed the border and entered the United States without inspection on or about March 18, 2024. The next day, on March 19, 2024, DHS border patrol agents arrested Petitioner pursuant to an arrest warrant, stating that he was "within the country in violation of the immigration laws and is therefore liable to being taken into custody as authorized by Section 236 of the [INA]," codified at 8 U.S.C. § 1226. Charles

10

Decl. Ex. B.  The Notice of Custody Determination states that CBP released Petitioner on his own recognizance pursuant to "the authority contained in section 236 of the [INA]."  Charles Decl. Ex. C.  The Order of Release on Recognizance issued on March 19, 2024, provided that he was released "[i]n accordance with section 236 of [INA] and the Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations."  Charles Decl. Ex. D.  Thus, on March 19, 2024, Petitioner was released on his own recognizance.  Accordingly, all of DHS's actions with respect Petitioner in March 2024 were taken pursuant to § 1226(a), as none of the DHS records related to Petitioner's 2024 arrest and detention make any reference at all to § 1225(b).  The same is true for Petitioner's current arrest and detention: Petitioner's arrest record from DHS is devoid of any reference to § 1225, and Respondent has not presented any records showing that Petitioner was detained pursuant to § 1225.

Further, if Petitioner was arrested and detained pursuant to § 1225(b), that authority would have mandated that, upon Petitioner's arrest in March 2024, he be detained or an individual determination made to grant him parole.  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e); *Biden v. Texas*, 597 U.S. 785, 806 (2022) (explaining that DHS's authority to parole applicants for admission is "not unbounded" because "DHS may exercise its discretion to parole applicants 'only on a case-by-case basis for urgent humanitarian reasons or significant public benefit'" (quoting 8 U.S.C. § 1182(d)(5)(A))).  But nothing in the record indicates that Petitioner was granted parole based on a case-by-case determination for urgent humanitarian reasons or public benefit.  Furthermore, such parole is granted only on a *temporary* basis; however, there is no evidence that any "expiration of time" was placed upon Petitioner's release such that his parole automatically terminated.  *See* 8 C.F.R. § 212.5(e)(1); 8 U.S.C. § 1182(d)(5)(A) (providing that "such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole

shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled"); *see* 8 C.F.R. 212.5(c) (officials may "after review of the individual case, parole into the United States temporarily in accordance with section 212(d)(5)(A) of the Act, [8 U.S.C. § 1182(d)(5)(A)], any alien applicant for admission, under such terms and conditions . . . as he or she may deem appropriate."). Further, Respondents do not contend that any notice was provided to Petitioner lawfully revoking any such alleged parole. *See id.* § 212.5(e)(2)(i). Thus, the fact that Respondents complied with none of the procedures prescribed by § 1182(d)(5)(A) and its implement regulations when releasing Petitioner in March 2024 and detaining him in 2025 supports the conclusion that Petitioner was not subject to § 1225(b)(2)'s mandatory detention, but rather to § 1226(a)'s discretionary detention.

Indeed, Petitioner's release on recognizance is incompatible with a release on parole into the United States within the meaning of § 1182(d)(5)(A). Rather, release on recognizance constitutes a form of conditional parole from detention housed in the provisions of § 1226's discretionary detention. *See Cruz-Miguel v. Holder*, 650 F.3d 189, 191, 198 (2d Cir. 2011) (distinguishing between being paroled into the United States and being released on recognizance, noting that they serve "distinct functions"); *see also Lopez Benitez*, 2025 WL 2371588, at *4 (where petitioner was initially arrested under § 236 and later released on recognizance, finding that petitioner was detained under § 1226; *Martinez v. Hyde*, 25-CV-11613 (BEM), 2025 WL 2084238, at *3 (D. Mass. July 24, 2025) (where a petitioner was released on her own recognizance, concluding that it "does not indicate that she was examined or detained under section 1225 but instead explicitly premises her release on section 1226 ('[i]n accordance with section 236 of the Immigration and Nationality Act')"); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding that a noncitizen released on an "Order of Release on Recognizance"

12

necessarily must have been detained and released under § 1226, including because he was not an "arriving alien" under the regulations governing § 1225 examinations); *Gomez v. Hyde*, 25-CV-11571 (JEK), 2025 WL 1869299, *5 (D. Mass July 7, 2025) (noting that "the government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole"); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("The respondents were . . . released on their own recognizance pursuant to DHS' conditional parole authority under . . . 8 U.S.C. § 1226 (a)(2)(B)[.]").

To the extent Respondent argues that the government should be permitted to clarify the detention authority that applies in this case, the distinction between a release on recognizance under § 1226 and release on parole under § 1225 is imbued with legal significance. These two provisions serve fundamentally different functions. Section 1226(a) "authorizes detention *only* '[o]n a warrant issued' by the Attorney General," *Jennings*, 583 U.S. at 302, and § 1225(b) contains no warrant requirement, *see* 8 U.S.C. § 1225(b). Thus, the use of a warrant in March 2024 to arrest and detain Petitioner is further evidence that Petitioner could only be detained pursuant to § 1226(a). *See Martinez*, 2025 WL 2084238, at *3 (noting that the distinction between release on recognizance and parole is "more than an [immigration] officer's choice of paperwork" but instead is legally distinct); *see also Hassan v. Crawford*, 25-CV-1408 (LMB) (IDD), 2025 WL 2682255, at *8 (Ed. Va. Sept. 19, 2025) ("Given the significant distinction between being paroled into the United States under § 1182(d)(5)(A) and being released on recognizance under § 1226(a)(2)(B), DHS's consistent citations to § 1226(a) on [petitioner's] paperwork does not support the argument that the federal respondents actually intended for him to be paroled into the United States pursuant to § 1182(d)(5)(A).").

In its opposition to the Petition and at oral argument, Respondent nonetheless argues that Petitioner was all along detained pursuant to § 1225(b)(2)(A)'s mandatory detention, despite DHS records stating the contrary, because Petitioner is an "applicant for admission" to the United States as he is present in the country without having been admitted or paroled; that Petitioner's release on his own recognizance does not change his status as an applicant for admission; that because Petitioner has not demonstrated to an examining immigration officer that he is "clearly and beyond a doubt entitled to be admitted," his detention is mandatory under § 1225(b)(2)(A); and that amendments to the immigration laws support the conclusion that Congress did not intend for aliens like Petitioner to be treated better than other aliens. Resp. at 11-17. In sum, Respondent argues that Petitioner has never "lawful[lly] ent[ered]" the United States. *Id.*

Respondent's novel and expansive construction of § 1225(b)(2)(A) fails to withstand scrutiny because it disregards the plain meaning of that provision, would render § 1226 and a recent amendment to it superfluous, and is inconsistent with Supreme Court's prior statutory interpretations.

Respondent has not pointed to a single Article III court that has adopted its expansive construction of § 1225(b)(2), but instead cites a recent BIA decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), to argue that Petitioner is an "applicant for admission" and therefore can be detained pursuant to § 1225, regardless of how many years they have been present in the United States. Resp. at 14-16. In that case, the BIA held that noncitizens who are present in the United States without admission and are arrested on a warrant are subject to § 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I&N Dec. at 227. However, while the BIA decision might be a helpful guidance, this Court is not bound by it, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86, 401 (2024) (interpretation of the meaning of a statute belongs to the "independent

judgment" of the courts, as "agencies have no special competence in resolving statutory ambiguities"), particularly where BIA made prior pronouncements to the contrary. *See Matter of Yajure Hurtado*, 29 I&N Dec. at 225 n.6 ("We acknowledge that for years Immigration Judges have conducted [§ 1226(a)] bond hearings for aliens who entered the United States without inspection."); *see Martinez*, 2025 WL 2084238, at *8 (discussing prior BIA decisions).  Under *Loper*, the Court is not required to defer to the BIA's recent interpretation, particularly when that view has not "remained consistent over time."  603 U.S. at 386; id. at 385-86 ("'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is'") (citations omitted); *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (stating that the "weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control").

This Court finds that the historical practice – under which § 1225(b)(2)(A) would not have applied to Petitioner – is consistent with the text, structure, and statutory scheme.  As noted above, § 1225(a) defines an applicant for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States" and in turn, § 1225(b)(2)(A) states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."

The government's argument that every noncitizen who has not been lawfully admitted into the United States continues to be a noncitizen "seeking admission" appears to equate "applicant for admission" with "seeking admission."  But such a reading would render the phrase "seeking

admission" in § 1225(b) superfluous—that is, it is not doing any work in the statutory text, which would violate the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("'[E]very clause and word of a statute' should have meaning."). It is a basic canon of statutory interpretation that a statute should be construed as to give effect to all its provisions and that no part will be superfluous. *Corley v. United States*, 556 U.S. 303, 314 (2009). If an interpretation of one provision "would render another provision superfluous, courts presume that interpretation is incorrect." *Bilski v. Kappos*, 561 U.S. 593, 607-08 (2010). This presumption is "strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013).

Under Respondent's reading and application of § 1225(b)(2), nearly all noncitizens already in the United States but not previously admitted or entered illegally would be subject to § 1225(b)'s mandatory detention. If, as Respondent submits, § 1225(b)'s mandatory detention provision applies to all noncitizens who remain applicants for admission to the United States, this would render superfluous the mandatory detention provisions found in § 1226(c)(1)(A), (D), and (E). Section 1226(c)(1)(A) provides that the "Attorney General shall take into custody any alien who is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title," such as crimes of moral turpitude and offenses relating to controlled substances. 8 U.S.C. § 1226(c)(1)(A). As *Hasan* explained, "this mandatory detention under § 1226(c) would be unnecessary if all persons who have not been admitted into the United States were already subject to § 1225(b)'s mandatory detention provisions." 2025 WL 2682255, at *9. Likewise, Congress amended § 1226 this year with the Laken Riley Act by adding § 1226(c)(1)(E), which makes noncitizens subject to mandatory detention if (1) they are inadmissible under certain provisions in 8 U.S.C. § 1182 and (2) are charged with, arrested for, convicted of, or admit to having committed

16

certain crimes. 8 U.S.C. § 1226(c)(1)(E). Even under this new amendment, only when the inadmissibility and the criminal conduct criterion are both satisfied did Congress intend for mandatory detention to be triggered. *See Gomez*, 2025 WL 186929, at *6. Thus, Respondent's theory that § 1225 applies to noncitizens who are arrested on a warrant while residing in the United States would make § 1226(c)(1)(E)'s criminal conduct requirement superfluous, thereby "nullify[ing] a statute that Congress enacted this very year." *Id.* at *7. In sum, the Court concludes that Respondent's reading of the relationship between § 1226 and § 1225 would contravene Congress's intent that, except as provided in § 1226(c), § 1226(a)'s discretionary framework applies to all citizens arrested on a warrant while residing the United States.

Further, the issuing officer did not deem Petitioner to be an "arriving alien" but instead deemed him, at the time, to be "present" in the United States. As explained *infra*, the Supreme Court has interpreted the language of noncitizens "seeking admission" to mean something different from those already present in the United States.

Finally, Respondent's interpretation of the statutory scheme does not square with more than a century of Supreme Court's holdings interpreting the relationship between §§ 1225(b) and 1226(a). In 1958, the Court held that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality[;] [i]n the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court later explained in *Zadvydas v. Davis* that "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." 533 U.S. 678, 693 (2001) (noting that "once an alien enters the country, the

legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent").  In *Jennings*, the Supreme Court reaffirmed this principle, stating that § 1225(b) governs "aliens seeking admission into the country" whereas § 1226(a) governs "aliens already in the country" who are subject to removal proceedings.  583 U.S. at 289.  And as recently as 2020, in *Department of Homeland Security v. Thuraissigiam*, where a petitioner was arrested a mere 25 yards after crossing the border, the Supreme Court held that he was still "at the threshold of initial entry" and although technically in the country, could still be treated as "an alien seeking initial entry."  591 U.S. 103, 114 (2020) (holding that a noncitizen detained "within 25 yards of the border" is treated as if stopped at the border and therefore due process claim failed).  Contrary to Respondent's position, *Thuraissigiam* did not upend more than a century of precedent but rather held that noncitizens detained close to the border "shortly after unlawful entry" have not yet "effected an entry."  *Id.* at 140.  It continues to be the law of in this country that noncitizens "on the threshold of initial entry stand[ ] on a different footing" than those who have "passed through our gates." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).  Here, the Court finds that Petitioner "effected entry" into the United States in the past year since his release, *see Thuraissigiam*, 591 U.S. at 140, and therefore was "already in the country," *see Jennings*, 583 U.S. at 289.

Accordingly, the Court finds that, under the circumstances here, Petitioner may only be subject to detention as a matter of discretion under § 1226(a).

## C.    Whether ICE's Detention of Petitioner Violates the Due Process Clause

The Court now turns to whether, under the circumstances of this case, ICE's detention of Petitioner violates his due process rights.  The Fifth Amendment's Due Process Clause prevents

the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that due process protections extend to noncitizens, including those in removal proceedings. *See id.* at 693 ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993). "Even noncitizens have a liberty interest in continued freedom from civil immigration confinement." *Valdez v. Joyce*, 25-CV-4627 (GBD), 2025 WL 1707737, at *2 (S.D.N.Y. June 18, 2025) (citing *Lopez v. Sessions*, 18-CV-4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018) (holding that "Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.")); *see Lopez Benitez v. Francis*, 25-CV-5937 (DEH), 2025 WL 2371588, at *9 (S.D.N.Y. Aug. 13, 2025). The Supreme Court has repeatedly—and recently— reiterated this principle. *See, e.g., Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (citation omitted)).

The Second Circuit has held that the *Mathews v. Eldridge* three-factor balancing test applies when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the

19

Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews*, 424 U.S. at 335.

To the extent that Respondent argues that Petitioner's detention does not violate the Due Process because he was subject to mandatory detention, the Court has rejected that premise. Respondent agrees that, to the extent DHS seeks to detain a noncitizen pursuant to the discretionary authority provided by 1226(a), ICE must follow certain procedural safeguards. Tr. at 26-27.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Petitioner contends that he "was wrongfully arrested while appearing at an immigration proceeding on his claim for asylum" as DHS "improperly arrested him and locked him up with no hearing and on the strength of no individualized determination." Pet. ¶ 89. Petitioner's liberty interest is clearly established. *See Valdez*, 2025 WL 1707737, at *3.

With respect to the second prong of the *Mathews* test, the record unequivocally demonstrates, and Respondent concedes both in its submissions and at oral argument, that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner in July 2025, and there was no change in circumstances from the time DHS released Petitioner on his own recognizance in March 2024 to his re-arrest and detention in July 2025. Tr. 33:9-12 (The Court: "Can I pause here? There is no dispute that there was no individualized determination?" Government Counsel: "That's correct, your Honor."); *id.* 36:25-37:2 (same); *id.* 35: 1-4 (Government: "[W]e conceded that Petitioner has not been arrested in the intervening months between March 2024 and July of 2025"); *id.* 37:6-17 (In response to Court's inquiry as to

what was the change in circumstances, the government responded, "there are no specific events that happened to Petitioner that changed."). Thus, the risk of erroneous deprivation of Petitioner's liberty interest is high. *See Lopez*, 2018 WL 2932726, at*11 (finding a risk of erroneous deprivation where petitioner was re-detained absent a change in circumstances, procedure, or evidentiary findings).

As to the third and final *Mathews* prong, "the Attorney General's discretion to detain individuals under 8 [] U.S.C. [§] 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Valdez*, 2025 WL 1707737, at *4 (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas*, 533 U.S. at 690). Here, as stated above, nothing suggests that Petitioner is a flight risk or a danger to the community. Rather, the record evidence shows that, in the nearly 16 months that Petitioner has resided in the United States, he timely filed for asylum application, appeared at his immigration court proceedings, was gainfully employed, and has had no criminal history. Letters of support from friends and neighbors of Petitioner highlight Petitioner's commitment to support his family, his strong family values and work ethic, and integrity and honesty. ECF 2-18. Simply put, there is no evidence that Petitioner posed a risk of flight or danger to the community sufficient to justify his detention. Thus, Respondent has failed to show a significant interest in Petitioner's continued detention.

Respondent's ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights. See *Valdez,* 2025 WL 1707737, at *4; *Lopez*, 2018 WL 2932726, at *15. Given the deprivation of Petitioner's liberty, formerly granted and approved by Respondent, the absence of any deliberative process prior to or contemporaneous with the deprivation, and the statutory and constitutional

rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy. *Id.*

## CONCLUSION

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus, ECF 1, is GRANTED. Respondent is ORDERED to immediately release Petitioner from custody.  By September 29, 2025, Respondent shall certify compliance with this Order by a filing on the docket and noting specifically that Petitioner has been released.  The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order and close this case.

SO ORDERED.

_____/s/_____

ORELIA E. MERCHANT
United States District Judge

September 29, 2025
Brooklyn, New York